(50 South. 409.)

No. 17,462.

LOUISIANA–TEXAS OIL & PIPE LINE CO. v. ATLANTA OIL & GAS CO.

(June 15, 1909.  Rehearing Denied Oct. 6, 1909.)

1. PLEDGES (§ 27*)—LIABILITY OF PLEDGEE—RENTAL VALUE OF PROPERTY PLEDGED.

The pledgee of oil machinery, who has not used the same for his own benefit, cannot be charged with its rental value by the pledgor, who has failed to redeem it pursuant to contract.

[Ed. Note.—For other cases, see Pledges, Dec. Dig. § 27.*]

2. APPEAL AND ERROR (§ 842*)—REVIEW—QUESTION OF FACT.

The question of damages to oil machinery while held in pledge is an issue of fact, on which the judgment below will not be disturbed, unless clearly erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3316–3330; Dec. Dig. § 842.*]

3. CONTRACTS (§ 319*)—PERFORMANCE—SUPPLEMENTAL CONTRACT—DEFAULT.

When a contract to sink a well to a certain depth has been performed, and the driller has thereby earned the stipulated compensation, his failure to comply with a supplemental contract to sink the well deeper will not affect the right acquired under the previous contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1493–1507; Dec. Dig. § 319.*]

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; A. J. Murff, Judge.

Action by the Louisiana-Texas Oil & Pipe Line Company against the Atlanta Oil & Gas Company.  Judgment for defendant, and plaintiff appeals.  Affirmed.

Alexander & Wilkinson, for appellant. Herndon & Herndon, for appellee.

LAND, J.  Plaintiff sues to rescind three contracts made with the defendant during

124 LA.—13

the year 1906 for the purpose of having its lands exploited for oil, and for damages for breach of contract, and for depreciation by misuse and abuse of a certain well rig delivered to defendant for the purpose of drilling for oil pursuant to the agreement between the parties.

The defendant answered that it claimed nothing under the contract of date February 10, 1906, that it had fully complied with the contract of date May 24, 1906, and was ready and willing to perform the contract of date December 31, 1906.  For further answer defendant reconvened, and prayed for judgment declaring it to be the owner of an undivided half interest in the two five-acre tracts of land described in the contract of date May 24, 1906, and for judgment for $1,500, with interest and attorney fees, on the note of the plaintiff to the order of the defendant, and for judgment preserving all of its rights and privileges under the same contract, and for general relief in the premises.

There was judgment in favor of the plaintiff, annulling the first and last contracts, and in favor of the defendant as the owner of an undivided half interest in one of the five-acre tracts, and condemning the plaintiff to pay the amount of the note, with interest and attorney fees.  The claims of the defendant as to the other tract and the oil well rig are not mentioned in the judgment.

Defendant has appealed, and the plaintiff has joined in the appeal, and for answer has prayed that the judgment below be reversed, and for judgment in favor of the plaintiff as prayed for in the petition.

On February 10, 1906, the parties entered into a written contract by which the plaintiff conveyed to defendant an undivided one-half interest in two certain five-acre tracts of land, and in consideration of said transfer the defendant agreed and obligated itself to continue the boring of a certain well,

"Old No. 2," then being bored on the above-described lands, to a depth of 2,500 feet unless oil in paying quantities should be found at a lesser depth; the defendant being made the exclusive judge of such contingency. The parties agreed on certain stipulations in the event the well developed into an oil producer in paying quantities. The contract recited that the drilling machinery then at well No. 2 was pledged to J. B. Reynolds for a debt of the plaintiff, and that the plaintiff was to secure a lease of said machinery from J. B. Reynolds to the defendant.

Some work was done under this contract, but it was abrogated by mutual consent; and on May 24, 1906, the parties entered into another agreement, by which the defendant agreed to sink a new well on one of the five-acre tracts near old well No. 2 to the depth of 1,900 feet at its own expense, furnishing everything needful except the well rig, which was to be furnished by the plaintiff. It was stipulated that, when said well is completed, each of the parties was to own one-half interest in the well, share and share alike, and that the parties were to own jointly the two five-acre tracts of land, and the well rig, including what might be added to the same by the defendant. It was further stipulated that any six-inch piping that might be bought by the defendant should not be owned jointly, but should remain the property of the defendant unless an oil well is brought in (which is a gusher), in which event the said piping was to be owned jointly by the parties. It was further agreed that the $1,500 advanced by the defendant to the plaintiff was to be paid back before any part of the well rig was delivered to the plaintiff.

It was further agreed that, if a paying well could be brought in at a lesser depth than 1,900 feet (and is not a gusher), the defendant should finish the well and apply the net proceeds of such well to the sinking of another well on said five acres of land upon which well No. 2 is situated to a depth of 1,900 feet, which, when completed, was to be the joint property of the contracting parties. It was further agreed that, if said well was sunk on any land other than said five acres, then said land was to be owned jointly by the parties to the contract.

On the same date plaintiff executed its promissory note for $1,500 to defendant, or order, payable 90 days after date, bearing 8 per cent. interest from date, and stipulating 10 per cent. attorney fees in the event the note should be placed in the hands of an attorney for collection, and also another instrument of writing, evidencing a pledge and delivery of the well rig to secure the prompt payment of said note.

The consideration of the note was money loaned and used in paying the debt due J. B. Reynolds and redeeming the well rig, which was delivered to the defendant. The contract of May 24, 1906, was performed on the part of the defendant by drilling a new well to a depth of 1,900 feet. The note was not paid at its maturity by the plaintiff company.

On December 31, 1906, the parties entered into a supplemental contract, which was not to affect or change the second contract, but was to be a part of the same. In the first paragraph of this supplemental agreement the parties recognized the necessity of sinking the well deeper than 1,900 feet and of incurring greater expenses than were at first anticipated if oil in paying quantity was to be struck. It was agreed that, if the defendant should succeed in bringing in a good producing oil well, the plaintiff would make to defendant certain "donations" (so called), consisting of one-third interest in a pipe line to be constructed out of the first revenues derived from the said well. It was further stipulated that the next revenues received from such well should be used in drilling

another well on lands of another oil corporation, etc.

The defendant sunk the well covered by the second contract to a depth of 2,262 feet without striking oil, and then suspended further operations, after expending about $13,-000 in the enterprise.

We agree with the trial judge that the contract of May 24, 1906, was fully performed by the defendant by sinking the well to the depth of 1,900 feet, and that the defendant thereby became the joint owner with plaintiff of the two five-acre tracts of land and the well rig described in the contract. The trial judge seems, by oversight, to have omitted including one of the tracts and the well rig in his decree in favor of the defendant. The contention of plaintiff that the compensation of the defendant under said contract was conditioned on the striking of oil is without merit. Defendant was bound by the terms of the agreement to sink the well to a depth of 1,900 feet, and nothing more. The contract of December 31, 1906, by stipulating an additional consideration for the sinking of the well beyond the depth of 1,900 feet, confirms the conclusion that the prior contract had been performed and the specified consideration earned by defendant. In a resolution adopted October 3, 1907, the board of directors of plaintiff corporation confined its claim to one-half interest in the machinery and one-half interest in the land in question.

As to the damages claimed for the use and abuse of the well rig, it is to be noted, first, that the defendant is the joint owner of the same; and, second, that defendant holds plaintiff's interest therein in pledge to secure the payment of the note for $1,500. Defendant, having a legal right to retain possession of the well rig, cannot be charged with hire. Plaintiff's remedy was to pay the note and retake possession.

We agree with the trial judge that the evidence as a whole does not show that the well rig has depreciated in value through the neglect of the defendant. The well rig was a second-hand affair when delivered to the defendant, and some parts were defective and some were missing. Defendant has spent a considerable sum in repairs and replacing portions of the machinery, and seems to have exercised the usual care bestowed on well rigs operating in oil fields.

We think plaintiff, having succeeded in annulling the last contract, is entitled to costs on the main demand, and should be condemned to pay the costs of the reconventional demand.

It is therefore ordered that the judgment below be amended, by recognizing the defendant as joint owner with the plaintiff of the 5 acres of land out of the S. A. Wadkins 160-acre tract, as described in a deed recorded in the office of the recorder of Caddo parish, La., in Book 41 of Conveyances, page 27, and in the contract of May 24, 1906, and also by recognizing that the defendant is joint owner with the plaintiff of the well rig and additions thereto described in the said contract of May 24, 1906, and by decreeing that the defendant pay the costs below of the main demand, and that the plaintiff pay the costs below of the reconventional demand; and it is further ordered that, as thus amended, the judgment appealed from be affirmed, and that the costs of appeal be paid one-half by each party.